Filed 8/14/14  T.S. v. Super. Ct. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| T.S.,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF HUMBOLDT COUNTY,<br><br>     Respondent;<br><br>HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>     Real Party in Interest. | A141965<br><br>(Humboldt County<br>Super. Ct. Nos. JV120220-1,<br>JV120220-2, JV120220-3) |

## MEMORANDUM OPINION[1]

The three children of petitioner T.S. (Father), L.S., then six years old, W.S., four years old, and D.S., two years old, were the subject of dependency petitions, filed December 26, 2012, alleging Father and the children's mother negligently failed to provide them with necessary medical care.  (Welf. & Inst. Code,[2] § 300, subd. (b).)  All three children were found to be dependents of the court, and Father was granted visitation and reunification services.[3]  Following a contested 12-month review hearing, the juvenile

---

[1] We resolve this case by a memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1(1), (3).

[2] All statutory references are to the Welfare and Institutions Code.

[3] The juvenile court's rulings with respect to the children's mother, who left the family, are not at issue in this petition and will not be discussed.

court entered an order finding that reasonable services had been provided, terminating reunification services to Father, and finding by clear and convincing evidence that return of the children to Father would be detrimental. The court scheduled a permanency planning hearing pursuant to section 366.26.

On June 29, 2014, Father filed a petition for an extraordinary writ in this court, seeking an order directing the juvenile court to vacate its order terminating reunification services and scheduling a section 366.26 hearing and to provide him further reunification services. Father contends the juvenile court's finding of detriment was not supported by substantial evidence, the reunification services and visitation provided to him were not adequate, and the court should have found extenuating circumstances allowing additional time for services.

The factual circumstances underlying Father's claims of error are known to the parties and are summarized in the "Opposition to Petition for Extraordinary Writ," filed in this matter on July 16, 2014, by the Humboldt County Department of Health and Human Services (Agency).

## A. *Detriment*

At the 12-month hearing, "[a]fter considering the relevant and admissible evidence, the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (f), 1st par.) "A substantial risk of detriment means that 'returning a child to parental custody represents some danger to the child's physical or emotional well-being.' [Citation.] [¶] In evaluating detriment, the juvenile court must consider the extent to which the parent participated in reunification services. [Citations.] The court must also consider the efforts or progress the parent has made toward eliminating the conditions that led to the child's out-of-home placement.' " (*In re E.D.* (2013) 217 Cal.App.4th 960, 965–966.) We review a juvenile court's finding of detriment for substantial evidence. (*In re B.S.* (2012) 209 Cal.App.4th 246, 252.)

In denying further reunification services to Father, the juvenile court noted that for these children, with their serious medical conditions, "being in [Father's] custody . . . threatens their very existence." Although Father was devoted to his children, the court concluded, he was unable or unwilling to provide the care and attention required to prevent deterioration of their health. As the court found, "[F]ather has not consistently and regularly contacted and visited the children and not made significant progress in resolving the problems that led to [the] children's removal, and has not demonstrated the capacity and ability to complete the treatment plan objectives or provide for the children's protection, physical or emotional well-being and special needs."

These findings are supported by substantial evidence. Each of the children has a serious health condition; L.S. and D.S. both suffer from cystic fibrosis, while W.S. is at heightened risk of kidney disease. They were originally detained because Father had not monitored their medical condition and not provided necessary care, leading to the hospitalization of L.S. and D.S. Over the course of the proceedings, Father was inconsistent and inattentive in assuming responsibility for their medical care, although he appeared to understand its importance. Visitation in his home was curtailed both because he could not be trusted to provide consistent care and exposed the children to tobacco and apparently marijuana smoke, despite their compromised respiratory conditions. His attention to the children's needs did not improve significantly over the 12-month course of services, despite the Agency's efforts, and by the end of the period his visitation was half-hearted and sporadic. Because Father refused to recognize the deficiencies in his care, let alone change his behavior, return of the children to his custody would have exposed them to a risk of the same serious harm that caused their detention.

Father does not really contest the evidentiary support for the finding of detriment, instead arguing there was no exploration of alternative approaches that would have provided him a better opportunity to demonstrate his ability to care for the children. We are satisfied that the Agency, over the course of 12 months, provided Father with

3

adequate opportunities and assistance to demonstrate his abilities. He proved unwilling or unable to assume the necessary responsibility.

## B. *Reunification Services*

The purpose of reunification services is to place the parent in a position to gain custody of the child. (*In re Karla C.* (2010) 186 Cal.App.4th 1236, 1244.) The law governing the provision of reunification services was summarized in *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415: "Family reunification services play a critical role in dependency proceedings. [Citations.] Reunification services should be tailored to the particular needs of the family. [Citation.] . . . [¶] The 'adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case.' [Citation.] To support a finding reasonable services were offered or provided, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' " (*Id.* at pp. 1425–1426.) We review the juvenile court's finding of reasonableness under the substantial evidence test. (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1346.)

At the time of the children's detention, the Agency found Father "overwhelmed with the tasks of providing specialized care for the children." It attempted to help him organize his life and instructed him in their care. In the dispositional report, the Agency prepared a 21-point list of activities designed to improve the health of the children and put Father in a position to care for them. To allow Father to become familiar with caring for the children, the Agency arranged for visitation in his home, with transport of children and the equipment needed for their care. When it became clear Father suffered from mental health conditions that might impair his parenting, the Agency arranged for counseling and assistance in obtaining health insurance. Substantial evidence supports a

4

conclusion that the Agency identified the problems leading to the children's detention and provided services targeted to address those problems.[4]

Father contends the Agency did not do enough to address his mental health disabilities, but given Father's refusal of the offered counseling and his insistence he was capable of providing care, any further efforts in this regard would likely have been futile.

## C. *Visitation*

Father criticizes the Agency's attempts to organize visitation, but the Agency's efforts were appropriate. Father was allowed unsupervised overnight visits for a time in an attempt to familiarize him with the children's healthcare needs, but these were terminated after he failed to provide consistent care for the children and L.S. fell ill. Thereafter, in-home unsupervised visits of shorter duration were permitted until the Agency became concerned about the children's exposure to tobacco and marijuana smoke in the home. The Agency offered to rent an "ozone machine" that apparently would make Father's home suitable, but he did not follow up with the social worker on the offer. Arrangements were then made for supervised visits to occur elsewhere. In the two months prior to the 12-month review hearing, Father had cancelled "a majority" of his scheduled visits. A similar pattern prevailed after the hearing, prior to the court's decision. Father's failure to reunify was not the result of the Agency's failure to arrange for adequate visitation.

## D. *Relative Placements*

Father contends the Agency did not sufficiently explore placement with his relatives. In fact, the Agency located family members in California, Kansas, Washington, and Nebraska, but none were able or willing to take the children permanently.

In particular, Father suggests the Agency should have explored permanent placement with the children's maternal grandmother, his mother-in-law, whom Father

---

[4] In this connection, we grant the Agency's motion to augment the record with a letter prepared by an examining physician concerning Father's health.

had accused at the 12-month review hearing of initiating the dependency proceeding to obtain custody.  The children were initially placed with the maternal grandmother and stayed with her for several months.  The Agency vaguely asserted in a subsequent status report that "exigent circumstances" required their removal from her care and deemed her unable to take custody, although she continued to be involved in the children's lives.  We assume the vagueness in the Agency's references was intended to protect the privacy of the maternal grandmother.  In light of Father's failure to provide evidence to refute the Agency's conclusion, other than that his mother-in-law was healthy, the juvenile court could rely without requiring further explanation on the Agency's conclusion that custody with her was not appropriate.

**E.  *Extenuating Circumstances***

Father argues the juvenile court erred in not finding "extenuating circumstances" to justify a further extension of reunification services beyond the 12-month review hearing.  Extending services beyond the 12-month review hearing is "disfavored." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 845.)  Such services "are available only if the juvenile court finds specifically that the parent has 'consistently and regularly contacted and visited with the child,' made 'significant progress' on the problems that led to removal, and 'demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs.' "  (*Ibid.*)

Father's brief does not even attempt to address these various factors, and we find substantial evidence to support the juvenile court's conclusion that Father failed to satisfy them.  His visitation with the children was inconsistent; he made little or no progress in mastering the skills necessary to maintain their health; and his resistance to cooperating with the Agency and healthcare professionals gave little reason for hope things would improve during the following six months.  The juvenile court did not err in declining to provide further reunification services.

Father's petition for an extraordinary writ is denied on the merits. (See *Kowis v. Howard* (1992) 3 Cal.4th 888, 894.) The decision is final in this court immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(2)(A).)

_____
Margulies, J.

We concur:

_____
Humes, P.J.

_____
Dondero, J.