Filed 6/24/13  Shawn s. v. Superior Court CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SHAWN S., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF HUMBOLDT COUNTY, <br><br> Respondent; <br><br> HUMBOLDT COUNTY DEPARTMENT OF HEALTH & HUMAN SERVICES et al., <br><br> Real Parties in Interest. | A138265 <br><br> (Humboldt County <br> Super. Ct. No. JV040182) |

**MEMORANDUM OPINION[1]**

Shawn S. (Father) is the father of Ethan S. (now age 11).  Ethan was the subject of a September 2004 dependency petition, based on an allegation of caretaker absence or incapacity.  (Welf. & Inst. Code, § 300, subd. (g).)[2]  At the time, Father was unable to provide for his son because he was participating in a residential drug treatment program.  Ethan was found to be a dependent of the court in November 2004.  Father was offered

---

[1] We resolve this case by a memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1 (a "memorandum or other abbreviated form of opinion" is appropriate when an appeal "rais[es] factual issues that are determined by the substantial evidence rule").  (§ 8.1(3).)

[2] All statutory references are to the Welfare and Institutions Code.

reunification services with a case plan that required him to complete his inpatient substance abuse program and follow all recommendations for aftercare. Father successfully completed his treatment program and the dependency was terminated in February 2006.

On June 3, 2011, a second dependency petition was filed alleging that Father was frequently consuming alcohol in the home to the point of passing out. He had also physically abused Ethan when he was drunk.

At the jurisdiction hearing held on July 28, 2011, the juvenile court sustained the petition as amended. The jurisdiction report filed by the Humboldt County Department of Health & Human Services (Department) concluded that Father "has unaddressed alcohol issues that render him unable or unwilling to provide adequate care for his son." A supplemental report stated that Father had been arrested on July 12, 2011, and charged with stealing a bottle of tequila from a supermarket. At the time of his arrest, he had another individual's prescription medication in his pocket.

At the uncontested disposition hearing, held on August 23, 2011, Ethan was again declared a dependent of the juvenile court. The court found Father's unaddressed substance abuse issues rendered him unable to provide regular care or supervision for the child. Reunification services were ordered for Father.

At the six-month status review hearing, the Department reported that Ethan was doing well in his placement in the home of his paternal grandfather. Father had completed a parenting class and was participating in the Alcohol and Other Drugs program (AOD). He had approximately three months left of a 52-week alcohol-abuse program called HART. He had served his jail time for the shoplifting charge and had completed his community service. He had moved into a clean and sober house. Visitation was reportedly going well. However, there were concerns that Father was misusing his prescription medications, possibly mixing them with alcohol or trading them

for alcohol. The court found returning Ethan to Father was not appropriate at that time, as Father still needed to stabilize his addiction.

The Department's report filed for the 12-month status review hearing notes that Father was kicked out of a clean and sober house in April 2012 after sustaining three positive tests for alcohol. He had moved into another clean and sober house and had not had any positive tests as of the date of the report, which was September 4, 2012. He had completed the HART program and was participating in weekly 12-step program meetings and activities. He was also participating in weekly therapy with Ethan and was trying to obtain housing. Ethan continued to do well in his grandfather's home and reportedly had expressed concerns about returning to his father's care. The Department recommended the court order six more months of reunification services.

At the 12-month review hearing held on September 4, 2012, the juvenile court adopted the findings and orders recommended by the Department. Father's reunification services were continued.

A contested 18-month review hearing was held on March 27, 2013. The Department's report prepared for this hearing notes Ethan had left a message with a social worker stating that he wished to live with Father. However, Father's voice could be heard in the background coaching Ethan on what to say. Subsequently, the boy reported that he wanted to stay with his grandfather. Ethan also stated that during the last six months there had been several incidents where Father was under the influence during their visits and Ethan had contacted his grandfather to pick him up early. In October 2012, Father had sold some items to a pawn shop and when he received the money asked Ethan if it would be ok for him to buy alcohol. That same month, they were at a movie and Father pulled a bottle of alcohol out in the theater and asked Ethan not to tell anyone. Father had been arrested for public intoxication on November 28, 2012. A police report regarding the incident states Father was so intoxicated that he could not walk, stand up, or communicate his name. The social worker reported that Father had left numerous

3

phone messages rambling about things that did not make sense. He appeared to be under the influence as his speech was slurred. At the hearing, the social worker testified that Ethan's grandfather, who is also Father's employer, had reported on numerous occasions that Father appeared to be under the influence while he was at work. The last time he reported this was about a month prior to the hearing.

The juvenile court agreed with Father's attorney that Father had done everything the Department had asked him to do over the past 18 months. However, the plan had not been successful. In particular, he had suffered two alcohol-related arrests, and his son had reported incidents in which he had been drinking alcohol in his presence. The court stressed that Ethan needed to be in a safe, alcohol-free home and that the grandfather was able to take care of the child's needs. The court concluded Father had completed his case plan, but his behaviors had not changed and he was still unable to provide a safe home for Ethan. The court scheduled a permanency planning hearing pursuant to section 366.26.

On May 2, 2013, Father filed the instant petition for an extraordinary writ in this court seeking an order directing the juvenile court to vacate its section 366.26 order and restore reunification services. Father contends the lower court erred in finding that returning Ethan to him would create a substantial risk of detriment to the child's well-being. He also asserts the court abused its discretion in denying him additional reunification services because the finding that he received reasonable reunification services is not supported by clear and convincing evidence. The factual circumstances underlying Father's claims of error are known to the parties and are summarized in Father's memorandum of points and authorities in support of his petition.

We apply the substantial evidence test to determine whether the record shows clear and convincing evidence of "a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor . . . and there are no reasonable means by which the minor's physical health can be protected without

4

removing the minor from the [parent's] physical custody." (§ 361, subd. (c)(1); *In re Henry V.* (2004) 119 Cal.App.4th 522, 529.)

We are aware that a parent need not be perfect to regain custody of a detained child. (*David B. v. Superior Court* (2004) 123 Cal.App.4th 768, 789–790.) We also acknowledge that Father substantially complied with the Department's requirements. But in the context of persistent long-term alcoholism, relapse—especially without prompt acknowledgment—is a significant factor supporting the juvenile court's rulings. Because his alcohol problem had led to two arrests during the pendency of this proceeding, and because there was credible testimony that Father's alcohol use was ongoing in spite of the fact that he did not have any recent positive tests, there is substantial evidence that his active use of alcohol would place Ethan at risk of emotional and physical harm were he to be placed in Father's custody.

As to Father's second claim, the law governing the provision of reunification services was summarized in *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415: "Family reunification services play a critical role in dependency proceedings. [Citations.] Reunification services should be tailored to the particular needs of the family. . . . [¶] The 'adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case.' [Citation.] To support a finding reasonable services were offered or provided, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.]" (*Id.* at pp. 1425–1426.) We review the juvenile court's finding of reasonableness under the

5

substantial evidence test.  (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1346.)

We find substantial evidence to support the trial court's conclusion that the services provided by the Department were reasonable.  In arguing services were inadequate, Father claims the Department's social worker should have asked him to re-engage in AOD after his arrest.  He also asserts she should have asked him to do residential treatment and should have done more to resolve any issues she had with his participation in therapy.  Yet Father does not state what benefit he believes these additional measures would have given him.  We note there is no dispute that Father substantially complied with all the requirements of his case plan.  These requirements were comprehensive, and Father's efforts to comply should not be discounted.  The problem here is not that the services were inadequate or unreasonable.  Instead, the problem is that Father, for whatever reason, remains unable to maintain sobriety.

Father's petition for an extraordinary writ is denied on the merits.  (See *Kowis v. Howard* (1992) 3 Cal.4th 888, 894.)  The decision is final in this court immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b)(3).)  Father's request to stay the hearing under section 366.26 is denied.

_____
Dondero, Acting P. J.

We concur:

_____
Banke, J.

_____
Sepulveda, J.*

* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

6